## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LANELLE SWANSON, on behalf of herself and all others similarly situated, <br><br>                  PLAINTIFFS, <br><br>    v. <br><br> LORD & TAYLOR LLC, <br><br>                DEFENDANT. | ) <br> ) <br> ) <br> )     C.A. No. 1:11-cv-10412-JLT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY CLASS

Jeffrey S. Brody (BBO# 556032)
brodyj@jacksonlewis.com
Douglas J. Hoffman (BBO# 640472)
hoffmand@jacksonlewis.com
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025; FAX: (617) 367-2155

Counsel for Lord & Taylor LLC

Defendant Lord & Taylor LLC ("Defendant" or "Lord & Taylor") submits this Opposition to Plaintiff's Motion to Certify Class, and in support thereof, states as follows.

## **INTRODUCTION**

To prevail on her motion for class certification in this matter, Plaintiff must, among other things, present significant proof that: (1) all purported class members were damaged by the same unlawful employment practice; (2) her claims are typical of other purported class members; and (3) the questions of law or fact common to class members predominate over questions relevant only to individual class members. See Fed. R. Civ. P. 23. Plaintiff cannot establish any of these requirements and thus her motion must be denied.

Attempting to satisfy the commonality element of Rule 23(a), Plaintiff asserts with no support that Lord & Taylor maintains an unwritten class wide policy of compelling its sales associates to work though meal breaks without compensation. Under the most recent U.S. Supreme Court precedent, to satisfy commonality under such a theory, Plaintiff must present "significant proof" that Lord & Taylor operates under a general policy of not compensating employees who worked through breaks. However, Plaintiff presents no evidence whatsoever that such a policy is applied to the purported class, and in fact the uncontroverted evidence belies her assertion. At best, Plaintiff is left with her own self-serving and disputed testimony that she sporadically, and only under the supervision of isolated lower-level managers, worked through meal breaks without compensation. Plaintiff can identify no other employees in Massachusetts whom this alleged practice was applied to, and Plaintiff has no knowledge of whether the alleged practice was applied in any store other than the store at which she worked.

The only policy Plaintiff can establish with any certainty is that Lord & Taylor's timekeeping system inserts a meal period into associates' time records if associates fail to correctly swipe out for the meal. However, as numerous courts have held, such a practice is

1

completely lawful, especially where, as here, subsequent procedures are in place to ensure that the employee was truly on break.  A potential legal violation only occurs if an employee actually worked during the meal period without compensation.  Faced with such "off-the-clock" claims, courts have consistently and routinely denied class certification because determining if the employees were actually working during the meal period will necessitate individualized inquiries unsuitable for class certification.

The individualized nature of the inquiry also dooms Plaintiff's attempt to satisfy the typicality requirement.  Even if Plaintiff could prove that she worked through meal periods without pay based on her experiences with a few low-level managers, the Court would be no closer to resolving the claims of any other class members.  Plaintiff's lack of typicality with the purported class members is further demonstrated by the 40 declarations from Massachusetts sales associates that Lord & Taylor submits herewith.  These associates dispute Plaintiff's class allegations, attesting that their experience has been nothing like the one Plaintiff describes, and that they have never been docked for a meal period when they actually worked through the break.  These associates further state that they have been paid for all time they worked at Lord & Taylor.  These declarations are uncontroverted and constitute compelling evidence that the Plaintiff cannot satisfy the typicality element of Fed. R. Civ. P. 23.

The same is true of Plaintiff's alternative theory, improperly raised for the first time at class certification, that Lord & Taylor's practice of rounding associates' time entries to the nearest tenth of an hour somehow results in off-the-clock work.  Not only should certification as to this claim fail because it was not timely raised, but the resolution of this claim would also require such individualized analysis that class litigation would be grossly inefficient.

Plaintiff is also inadequate as a named plaintiff, because Plaintiff did properly not file a complaint with the Massachusetts Attorney General raising claims of off-the-clock work, as

required by M.G.L. c. 149 § 150, prior to the filing of this action.  Her failure to exhaust her administrative remedies renders her, as a matter of law, inadequate to be a class representative.

## STATEMENT OF FACTS

Lord & Taylor operates four department stores in Massachusetts, which are located in Boston, Braintree, Burlington, and Natick.  Beginning in or about March 2006, Plaintiff worked full time at Lord & Taylor's Boston store as a sales associate selling handbags.  Swanson Tr., Ex. A, 31-32.[1]  At that time, she received the employee handbook and attended a training class.  Id. 35:14-23; 103:9; 104:10-12.   Plaintiff continued to work at Lord & Taylor in various departments until April 2010.  During this time, she had at least four different direct supervisors, known as Area Sales Managers ("ASM").  Swanson Tr., Ex. A, 34:6-21.

Lord & Taylor goes to great lengths to ensure that all of its sales associates are correctly compensated for all hours worked.  It is Lord & Taylor's policy that all associates are to work only while on the clock, and that they are to be paid for all time worked.  Declaration of Colleen Harkins ("Harkins Decl."), Ex. B, ¶ 3.  To ensure accurate tracking of hours, each sales associate is provided a swipe card to swipe in and out using the store's time clock.  Duval Tr., Ex. C, 29:3-13; Nocchi Tr., Ex. D, 14:1-6; Swanson Tr. 36:22-37:12.  Lord & Taylor's official policy, as stated in the associate handbook, is that all associates must swipe in and out for all meal breaks and at the beginning and end of their shift.  Associate Handbook, Ex. E, at LT001029 ("It is necessary that you swipe "in" and "out" personally to record all hours worked and also lunch/dinner hours."); Swanson Tr., Ex. A, 54:19-21; Duval Tr., Ex. C, 50:6-20; Nocchi Tr., Ex. D, at 18:11-20:4.  Consistent with Massachusetts and federal law, Lord & Taylor's timekeeping system automatically rounds its associates' swipes to the nearest tenth of an hour.  Nocchi Tr., Ex. D, 26:12-22; Harkins Decl., Ex. B, ¶ 5.  If an associate swipes within six minutes of his or

---

[1] All exhibits are attached to the Declaration of Douglas Hoffman, submitted herewith.

her scheduled swipe time (either before or after the start time), the associate's time is rounded to his or her scheduled swipe in/out time.  Nocchi Tr., Ex. D, 26:19-27:2.  Times are rounded up or down based on when an associate swipes in and out.  Harkins Decl., Ex. B, ¶ 5; Nocchi Tr., Ex. D, 46:3-11; Report Training Manual, Ex. F, at LT000298 ("[The system] allows associate to swipe in 6 min early or 6 min late but post scheduled time").

Lord & Taylor's full-time sales associates in Massachusetts are provided a one hour unpaid meal break each day, as well as a 15-minute paid break.[2]  Nocchi Tr., Ex. D, 19:1-24; Harkins Decl., Ex. B, ¶ 4; Associate Handbook, Ex. E, at LT001029.  Lord & Taylor's official policy is that associates must take these breaks, as required by state law.  Nocchi Tr., Ex. D, 64:24:65:17.  For "different reasons," associates sometimes fail to swipe in and/or out for their meal break.  Swanson Tr., Ex. A, 37:14-38:4; Duval Tr., Ex. C, 58:8-14; 65:22-66:6; Nocchi Tr., Ex. D, 18:11-16.  For example, associates might forget to swipe; they may forget their swipe card at home, or misplace it.  Swanson Tr., Ex. A, 37-38.  Usually, the associate reports the swiping error to a manager and it is corrected the same day.  Harkins Decl., Ex. B,  ¶ 6; Duval Tr., Ex. C,  65:22-66:6; Screen Training Manual, Ex. G, at LT000242; Human Resources Manual, Ex. H at LT000519 ("Swiping errors should be corrected on the day they occur.").

When an associate fails to both swipe out and back in for a meal break, and if the error is not corrected the same day, Lord & Taylor has instituted a two-step process to ensure that all meal breaks are accounted for, and that employees are paid for all time actually worked.  First, the timekeeping system assumes that the associate followed his/her scheduled hours and took his/her hour for lunch, and inserts a meal period into the associate's time record.[3]  Nocchi Tr.,

---

[2] Massachusetts law only requires a 30-minute meal break for shifts of more than six hours.  M.G.L. c. 149 § 100.

[3] Thus, this policy is never applied to associates who follow company policy and swipe out for their meal.  Nor is it applied to associates who swipe out for a break of less than an hour, or to associates who swipe out for their meal but forget to swipe back in, or vice versa.

Ex. D, 30:24-31:4, 32:12-16; Duval Tr., Ex. C, 65:22; Harkins Decl., Ex. B ¶ 6.  Second, to ensure that the insertion of the meal break was appropriate, the system automatically creates a "deviation report," reflecting the fact that the associate's time was adjusted to account for the missed swipe.  Harkins Decl., Ex. B, ¶ 6; Nocchi Tr., Ex. D, 35:18-36:1, 64:8-23; Duval Tr., Ex. C, 35:6-36:2; 65:22-66:16; Lord & Taylor Report Training Manual, Ex. F, at LT000286.

The following morning, the deviation reports are automatically transmitted to the store where the missed swipe occurred.  Harkins Decl., Ex. B, ¶ 6; Nocchi Tr., Ex. D, 20:5-21:12; Duval Tr., Ex. C, 65:22-66:16.  Lord & Taylor has a policy stating that these deviation reports are to be distributed to the ASM responsible for supervising the associate whose missed swipe caused the deviation report, so that the ASM can consult with the associate and determine if he/she simply forgot to swipe out, or if the associate actually worked through the break.  Nocchi Tr., Ex. D, 20:5-21:12, 37:15-38:6; Duval Tr., Ex. C,  35:6-36:2; 65:22-66:7.  The policy states:

> If an associate swipes incorrectly, it will be reported on the … Schedule Deviation and Error Report.  This report lists any associate who did not clock correctly.  It prints daily . . . and should be distributed to ASMs for corrections of posted time and attend codes.

Lord & Taylor Report Training Manual, Ex. F, at LT000286.[4]  In virtually all cases, the insertion of the meal break is appropriate because the associate failed to swipe out for the break.  However, if the associate actually worked during the meal period in question, the time records are adjusted and the associate is paid for the time worked.[5]  Duval Tr., Ex. C, at 35:6-36:2; 64:22-65:4; Nocchi Tr., Ex. D,  37:15-38:6, 51:17-52:3; Harkins Decl., Ex. B, ¶ 6.

---

[4] See also Store Guide to Time and Attendance, Ex. O, at LT00314 ("Deviation … reports are available each day which highlight associates whose prior day swiped time deviated from their scheduled shift.  These deviations and absences should be researched and, if necessary, their time clock swipes edited, on a daily basis.").

[5] Time entries can be, and are, also corrected even if the swiping error is not discovered until the following week.  Screen Training Manual, Ex.G, at LT000245 (providing instructions to store personnel for "time entry adjustments for previous week").

If at any time an associate wants to double-check to be sure that he or she was paid correctly, the associate can view on a computer screen the "posted" hours for which the associate was compensated (showing the time the system clocked them in and out). Duval Tr., Ex. C, 57:18-60:2; Harkins Decl., Ex. B, ¶ 7. If there is a discrepancy between the time logged in the system and the hours the associate actually worked, the associate's time records are adjusted manually to accurately reflect the amount of time the associate worked. Duval Tr., Ex. C, 35:16-36:2, 66:20-67:2; Nocchi Tr., Ex. D, 51:17-52:13; Harkins Decl., Ex. B, ¶ 7; Associate Declarations, Ex. J. Indeed, due to the effectiveness of these procedures, over the past four years not a single Massachusetts employee other than the Plaintiff has made a complaint about not being paid for time worked. Duval Tr., Ex. C, 30:20-31:1; Harkins Decl., Ex. B, ¶ 8.

During Plaintiff's employment from 2006 to 2010, she regularly failed to swipe in and out accurately. Swanson Tr., Ex. A, 95-97. Her swiping issues were severe enough that the issue was raised in two of her annual performance reviews.[6] Swanson Performance Reviews, Exs. K, L. As these reviews reflected, and as Plaintiff fully acknowledges, she had serious trouble with "swiping accuracy when arriving, leaving, and during meal breaks." Swanson Tr., Ex. A, 104:18-105:11. Plaintiff also lost or misplaced her swipe card on occasion, and at other times simply forgot to swipe in or out. Id. 45:7-9; 46:20-47:3. When Plaintiff forgot to swipe out for her meal break, she did not swipe back in upon her return, knowing the system would automatically account for her meal break. Id. 55:2-5. When Plaintiff had swiping issues, she often used the procedures described above to ensure that she was accurately credited for hours worked, that she was permitted to review her posted time entries when she asked to do so, and that any necessary corrections were made. Id. 37:23-38:3; 41:16-42:15, 45:1-6, 104:3-9.

---

[6] Plaintiff also conceded problems with punctuality, which was listed as a problem area on her performance reviews for the years 2007 and 2008. Id. 97:11- 101:1; Swanson Performance Reviews, Exs. K, L..

According to Plaintiff, Lord & Taylor management was always "open" and "welcoming" to her in addressing and correcting her swiping issues. Id. at 58:17-19.

## ARGUMENT

## I.    THE STANDARDS FOR CLASS CERTIFICATION

A motion for class certification places the burden on a plaintiff to establish all four requirements of Rule 23(a): commonality, adequacy, typicality, and numerosity, as well as one of the three prongs of Rule 23(b).  Here, Plaintiff seeks certification pursuant to Rule 23(b)(3), which requires that: (1) common questions of law or fact predominate over questions affecting individual members; and (2) a class action is superior to other methods of adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  If Plaintiff fails to satisfy any requirement of Rule 23, her motion must be denied.

The United States Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011) once again clarified the high hurdle plaintiffs must clear to secure class certification.  Litigation as a class must be viewed as an "exception to the usual rule that litigation is conducted on behalf of the named plaintiffs only."  Dukes, 131 S. Ct. at 2550 (emphasis added).  In order to overcome the presumption in favor of individual litigation, plaintiffs must make a sufficient factual showing, after a rigorous analysis, that they have met the elements of Rule 23.  Id. at 2551.  Dukes reiterated the well-settled concept that "Rule 23 does not set forth a mere pleading standard."  Id.  Instead, a plaintiff must introduce evidence to establish that all of the elements of Rule 23 are met.

## II.    PLAINTIFF HAS NOT SATISFIED THE COMMONALITY REQUIREMENT.

To establish commonality, Plaintiff must make a factual showing that all class members were damaged by an unlawful employment practice, and that a class wide proceeding would

"generate common answers" as to the defendant's liability to all class members.  Id.[7]  See also

England v. Advance Stores Co., Inc., 263 F.R.D. 423, 454 (W.D. Ky. 2009) (plaintiffs seeking

class certification must make a factual showing that they were "victims of a common policy or

plan that violated the law.") (emphasis added) (quoting Scholtisek v. The Eldere Corp., 229

F.R.D. 381, 387 (W.D.N.Y 2005)).

###  A.  Commonality is Not Established as to Plaintiff's Meal Break Claim.

Plaintiff alleges that Lord & Taylor has an unwritten practice of denying compensation to

sales associates who work through meal breaks.  To meet the commonality requirement with

respect to such a claim, Plaintiff must present "significant proof" that Lord & Taylor "operated

under a general policy" of denying compensation for associates who worked through meal

breaks.  Dukes, 131 S. Ct. at 2553-54.  Even if this inquiry overlaps with the merits of Plaintiff's

claim, it is nonetheless proper and necessary to make this determination at class certification.

Dukes, 131 S. Ct. at 2551-52 (recognizing that the commonality analysis may entail some

overlap with the merits of a plaintiff's claim, which "cannot be helped").  In Dukes, the plaintiff

tried to establish that the defendant operated under a general policy of discrimination.  Id.

Although the Plaintiff submitted an expert analysis of the defendant's payroll records, as well as

120 affidavits from class members who claimed discrimination, the Court held that this showing

was "worlds away" from "significant proof" that the defendant operated under a general policy

of discrimination.  Id. at 2554.

Here, Plaintiff presents no evidence to support her claim that a policy of denying

compensation for hours worked applied to the purported class.  The only practice Plaintiff

identifies which truly applied to all associates is the insertion of a meal break into associates'

time records when he or she neglected to swipe out for their meal.  However, courts routinely

---

[7] Quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-132 (2009).

hold that such a practice is lawful.  See e.g. Deppen v. The Detroit Medical Center, 2011 U.S. Dist. LEXIS 78247, at *14 (E.D. Mich. July 19, 2011) (summary judgment granted for employer because automatic meal deductions are not unlawful under the FLSA, absent evidence that plaintiff actually worked through her breaks).  The fact that meal breaks were inserted through Lord & Taylor's timekeeping system does not mean that Plaintiff or purported class members were working during those periods.  Given Lord & Taylor's policy that all employees must take their meal breaks, it is just as likely, if not more likely, that these insertions mean that associates simply forgot to swipe out for these breaks.  As Plaintiff conceded, she failed to swipe out for meal breaks for various reasons, including her own forgetfulness.  Swanson Tr., Ex. A, 37:23-38:3, 45:7-9, 46:20-47:3, 54:19-55:5.

The only "evidence" that Plaintiff offers in terms of establishing a common scheme to deny payment for off-the-clock work is her own self-serving testimony that she was occasionally denied compensation by her ASM after working through a meal break.  Plaintiff claims that some of the ASMs to whom she reported sometimes (but not always) refused to compensate her for meal breaks when she failed to ask for prior approval to work through the break.  Swanson Tr., Ex. A, 65:19-69:22.  According to Plaintiff, some of her ASMs were more likely to allow her to be compensated than others.  Id.  For example, Plaintiff claims that an ASM named Donald refused to approve payment for her work during breaks "a few times."  Id. at 66:2-19. She testified that an ASM named Christian sometimes approved payment for her work during breaks, and other times did not.  Id. 66:23-67:19.  Plaintiff agreed that an ASM named "Dierdre" was "very fair" and often agreed to pay her when she worked through breaks.  Id. at 68-69. Accordingly, even taking Plaintiff at her word, this alleged "policy" was only applied to her sporadically.  Also, particularly relevant to the commonality analysis is that Plaintiff acknowledges that she is not aware whether others were also denied payment for meal breaks.

9

Id. 80:1-4, 81:10-13.   Further, Plaintiff has no knowledge whether associates in other stores were paid when they worked through meal breaks.  Id.  Accordingly, Plaintiff has not made any showing, much less offered "significant proof," of an unlawful class wide practice required by the commonality element.

For these reasons, courts routinely deny certification of "off-the-clock" claims such as Plaintiff asserts here, even where an employer's practice is to automatically deduct a set period of time each day to account for a meal break.  This is true even under the more lenient standard for conditional certification of a collective action under the Fair Labor Standards Act, under which plaintiffs need only submit minimal evidence that they are "similarly situated" to other employees.  For example, in Cason v. Vibra Healthcare, 2011 U.S. Dist. LEXIS 47160 (E.D. Mich. May 3, 2011), the plaintiff alleged that her employer automatically deducted 30 minutes per day for a meal break, even though employees regularly worked through meal breaks.  Id. at *2.  Although the Court applied the "fairly lenient" standard for collective actions under the FLSA, it denied plaintiff's motion.  The court held that the existence of an automatic deduction for meal breaks was not sufficient to tie the employees together for FLSA purposes because the automatic deduction, in itself, is not unlawful.  Id. at *8 (citing Frye v. Baptist Mem. Hosp., Inc., 2010 U.S. Dist LEXIS 101996 (W.D. Tenn., Sept. 27, 2010 (decertifying collective action alleging automatic meal break deduction policy)).  Although the plaintiff in Cason sought to establish a scheme of off-the-clock work through her own experiences and testimony, the Court stated that it was unable to find a "single case" where certification was granted based upon the allegations of a single employee.  Id. at *7  n. 3.  Certification was thus denied.

Likewise, in Saleen v. Waste Management, Inc., 2009 U.S. Dist. LEXIS 49891 (D. Minn. June 15, 2009), the plaintiffs alleged a uniform automatic deduction policy for meal breaks, and that they often worked through these breaks without being paid.  Id. at *13.  The Court denied

certification because the deductions, by themselves, did not violate the law.  Id.  In fact, just like Lord & Taylor's policy, the defendant provided a mechanism for employees to reverse the deduction if they had worked through a break.  Id.  The Court denied class certification despite the fact that the plaintiff submitted declarations from 112 employees stating that they were denied compensation for time worked during breaks.  Id. at *15.  Such evidence, which is far more substantial than any evidence submitted by Plaintiff, was held insufficient to establish the existence of a single unlawful policy or plan required to justify certification.  Id. at *29-30.

The same result was reached in White v. Baptist Memorial Health Care Corp., 2011 U.S. Dist. LEXIS 52928 (W.D. Tenn. May 17, 2011).  White addressed a motion to decertify an FLSA collective action, applying a certification standard "less stringent" than under Rule 23.  Id. at *12.  In White, the plaintiff challenged the employer's payroll system, which automatically deducted time for a meal break each day.  Id. at *3. The Court observed that in order to certify an action, a Plaintiff must establish a common policy that "potentially violate(s) the FLSA." However, because standing alone, the automatic meal break deduction does not violate the FLSA, this practice could not support certification.  Id. at *24-25 (citations omitted).[8]

For the same reasons, Courts routinely deny class certification under Rule 23 where a plaintiff's claims are based on working "off-the-clock."  See, e.g., Koike v. Starbucks Corp., 378 Fed. Appx. 659, 661-62 (9th Cir. 2010) (affirming denial of certification for off-the-clock claim because "individualized factual determinations are required to determine whether class members did in fact engage in off-the-clock work"); Babineau v. Fed. Express Corp., 576 F.3d 1183, 1195 (11th Cir. 2009) (affirming denial of certification of off-the-clock claims due to lack of common

---

[8] Recent cases have echoed the holdings of White, Saleen, and Cason that an automatic meal break deduction is not a sufficient common practice or policy to justify collective litigation of a purported class' claims.  See e.g. MacGregor v. Farmers Ins. Exchange, 2011 U.S. Dist. LEXIS 80361, at *15-16 (D.S.C. July 22, 2011) (certification of unpaid meal break claims based on automatic deduction denied because individualized inquiries would be needed to determine if each employee actually worked through the break without compensation); Prise v. Alderwoods Group, Inc., 2011 U.S. Dist. LEXIS 101817, at *83-85 (W.D. Pa. Sept. 9, 2011) (decertifying collective action for unpaid meal breaks absent evidence of a single corporate policy to deny payment for missed meal breaks).

proof that employees had worked without compensation); <u>Washington v. Joe's Crab Shack</u>, 217 F.R.D. 629, 640 (N.D. Cal. 2010) (denying certification of, *inter alia*, "off-the-clock" claims due to the individualized inquiries needed as to whether employees were actually working or on break at the time in question); <u>Masterson v. Federal Express Corp.</u>, 269 F.R.D. 439, 445 (M.D. Pa. 2010) (certification of "off-the-clock" claims denied due to individualized inquiries needed to determine if employees were actually working during "gap periods"); <u>Slayton v. Iowa College Acquisition Corp.</u>, 2010 U.S. Dist. LEXIS 106643, at *9-10 (N.D. Ill. Oct. 5, 2010) (same); <u>Helm v. Alderwoods Group, Inc.</u>, 2009 U.S. Dist. LEXIS 123527, at *31-32 (N.D. Cal. Dec. 29, 2009) (denying certification of claims for missed meal breaks because resolution would require inquiry into whether each employee actually worked during the time in question).

In light of Plaintiff's utter failure to present any evidence of a class wide unlawful practice, certification fails as a matter of law, even if Lord & Taylor presented no evidence of its own. Lord & Taylor nevertheless offers declarations from 40 different Lord & Taylor sales associates in Massachusetts, from each of Lord & Taylor's four Massachusetts stores, all of whom attest they have been paid for all hours worked by Lord & Taylor, and that pay was not withheld from any meal breaks they actually worked. <u>See</u> Ex J.[9] The declarants also affirm the processes utilized by Lord & Taylor to ensure that associates are paid accurately. <u>Id.</u>

**B. <u>Commonality is Lacking As to Plaintiff's Rounding Claim.</u>**

Commonality is also not met as to Plaintiff's "rounding" claim. Lord & Taylor rounds associates' swiping entries to the nearest tenth of an hour, whether the associate swipes in before or after the beginning of the shift. Nocchi Tr. 26:15-27:2. This rounding practice is specifically authorized by Massachusetts law. 455 CMR 2.06(3) ("An employer may round an employee's starting and stopping time to the nearest . . . one-tenth . . . of an hour provided that this manner of

---

[9] Each affiant signed a form stating that they participated in the interviews voluntarily, and were advised that they may be part of the purported class in this case. <u>See</u> Ex. J.

computing working time averages out over a reasonable period of time so that an employee is fully compensated for all the time he or she actually worked."). Because Lord & Taylor's rounding policy is not an unlawful common policy or practice that damaged class members in the same manner, commonality is not present as to this claim. Also, due to the individual inquiries needed to resolve such claims, it fails the predominance test, as explained below.

In addition, Plaintiff failed to raise this new theory of liability based on Lord & Taylor's rounding practice in her Complaint. Plaintiffs are not permitted to introduce new theories of liability for the first time in a motion for class certification. Brown v. Am. Airlines, Inc., 2011 U.S. Dist. LEXIS 99495, at *36 (C.D. Cal. Aug. 29, 2011) ("Class certification is not a time for asserting new legal theories that were not pleaded in the complaint."). See also Lozano v. AT&T Wireless Services, Inc., 504 F.3d 718, 730 (9th Cir. 2007) (reversing class certification based on theory which was not pled in the complaint); Stephenson Oil Co. v. Citgo Petroleum Corp., 271 F.R.D. 323, 330 (N.D. Okla. 2010) (refusing to consider class certification based on a novel theory raised at class certification) (citing Schoenbaum v. E.I. DuPont de Nemours and Co., 2009 U.S. Dist. LEXIS 33313, 2009 WL 1045469, at *5 (E.D. Mo. April 20, 2009) (refusing to allow amendment to add theories of relief where the defendants had been preparing for class-certification hearing and defendant's "approach to class certification would have been managed quite differently if these new theories had been timely advanced")).

Not only was this allegation not raised in the Complaint, Plaintiff never mentioned this claim at her own deposition when specifically asked about the bases for her claims, indicating that she had no other complaints about how she was compensated at Lord & Taylor. Swanson Tr., Ex. A, 105:12-106:2. Allowing Plaintiff to seek certification based on this new theory not raised prior to her motion for class certification would prejudice Lord & Taylor, as it did not have the opportunity to conduct discovery on this allegation. Specifically, Plaintiff's theory is

13

based on an argument (unsupported by any sworn testimony of her own) that she and other class members were unaware of the rounding policy.  Had Defendant been aware that Plaintiff was challenging this practice, Defendant would have had the opportunity to depose Plaintiff regarding whether she was aware of it during her employment at Lord & Taylor.  For these reasons, the Court cannot certify Plaintiff's purported class based on the "rounding" theory.

## III.    PLAINTIFF IS NOT TYPICAL OF OTHER PURPORTED CLASS MEMBERS.

Not only does Plaintiff fail to establish commonality, she also fails to satisfy the typicality requirement of Fed. R. Civ. P. 23(a).  Typicality requires that Plaintiff establish that other class members "have the same or similar injury," that the Plaintiff does, that the action is "based on conduct which is not unique to the named plaintiffs," and "other class members have been injured by the same course of conduct."  Joe's Crab Shack, 271 F.R.D. at 629.  In other words, typicality is satisfied when "the named plaintiff who proves his own claim would also prove the claim of the entire class."  Clarke v. Ford Motor Co., 228 F.R.D. 631, 636 (E.D. Wis. 2005) (citing Gesell v. Commonwealth Edison Co., 216 F.R.D. 616, 624 (C. D. Ill. 2003)).

Plaintiff has not demonstrated typicality.  Even if she proves that a few isolated ASMs denied her pay after she worked through meal breaks, it would not prove that the same practice was applied to any other sales associates, especially outside of the store where she worked. Plaintiff in fact acknowledges that she is not aware of any other sales associates who were allegedly compelled to work through meal breaks without compensation. Swanson Tr. 80:1-4, 81:10-13.  Nor does she have any reason to think that associates who worked at other Lord & Taylor stores were subject to the same policies to which she claims to have been subjected.[10]  Id.

---

[10] Plaintiff's typicality is further undermined by her repeated inability to follow the company's swiping policies. Swanson Tr., Ex. A 104:18-105:11, and Ex. K, L..

Given the dearth of evidence offered by Plaintiff, the Court need not inquire further. However, the 40 declarations submitted by Lord & Taylor with this opposition also demonstrate that Plaintiffs' claims are not typical of the purported class.   See Ex. J.   The declarations demonstrate that these sales associates' experience at Lord & Taylor was completely different than what Plaintiff claims to have experienced.   All 40 declarants state that (1) they are paid for all hours worked; (2) when they forget to swipe out for meal breaks, they discuss the issue with their supervisors and the records are corrected to pay them for the time they actually worked; (3) time is not deducted from their paychecks for meal breaks when they have actually worked during that time; and (4) associates who fail to swipe in accurately can have their time corrected by human resources, the store operations manager, or the store's time keeper.   Id.

Plaintiff claims that these declarations should not be considered on class certification.[11] However, declarations such as these are regularly considered at the class certification stage to establish that a plaintiff lacks typicality, or otherwise falls short of Rule 23's requirements.   For example, in Garcia v. Sun Pacific Farming Coop., 2008 U.S. Dist. LEXIS 111969, (E.D. Cal., May 14, 2008), aff'd, 359 Fed.Appx. 724 (9th Cir. Nov. 13, 2009), in response to the seven affidavits offered by the plaintiff on class certification, defendants presented 33 declarations of employees who testified that they did not work off-the-clock and received meal and rest periods. 2008 U.S. Dist. LEXIS 111969, at *9.   Because the evidence showed "significant differences" in the way different employees were treated, the plaintiff satisfied neither the commonality nor typicality elements of Rule 23.   Id. at *32.   Likewise, in Joe's Crab Shack, 271 F.R.D. 629, the

---

[11] Plaintiff also argues that these affidavits are inadmissible, falsely claiming that she was cut off from all discovery concerning these affidavits and from questioning the declarants about their experiences.   As further discussed in Lord & Taylor's separate motion for a protective order, Plaintiff has been in possession of these declarations since before the initial scheduling conference in this matter.   Yet, Plaintiff never expressed any interest in deposing or contacting these individuals until after class certification discovery closed.   Defendant subsequently provided Plaintiff with the name and contact information for each of these affiants, and Plaintiff is free to attempt to speak to these individuals if she so chooses.

court denied class certification based in part upon conflicting anecdotal evidence of unlawful timekeeping practices.  There, the plaintiff conceded that defendant's written policies required payment of overtime, meal and rest breaks, and prohibited "off-the-clock" work, but claimed that those written policies were simply "ignored."  The plaintiff introduced seven declarations to support his claims of an off-the-clock work policy.  The defendant responded by submitting its own affidavits from employees stating that they had not been forced to work off-the-clock.  Id., at 637.  Reviewing the evidence, the court found that class certification was not appropriate.  Id. at 642-43.  See also Burk v. Contemporary Home Servs., 2007 U.S. Dist. LEXIS 56395, at *5 (W.D. Wash. Aug. 1, 2007) (typicality not satisfied, in part, based on declarations presented by employees contradicting the plaintiff's allegations of off-the-clock work).

Here, in the face of the 40 affidavits submitted by Lord & Taylor, Plaintiff submits nothing other than her own unsupported and disputed testimony that she sometimes worked through meal breaks without compensation.  Plaintiff concedes that she has no knowledge of others who worked off the clock, and is unaware of whether the policy she complains of (refusal to compensate her for time worked) was ever enforced outside of Lord & Taylor's Boston store.  Under these circumstances, Plaintiff has not made any evidentiary showing that her experiences were typical of other class members.

## IV.   PLAINTIFF IS NOT AN ADEQUATE CLASS REPRESENTATIVE BECAUSE SHE DID NOT EXHAUST HER ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS SUIT.

Not only does Plaintiff fail to satisfy the commonality and typicality requirements, she also fails to meet the test for adequacy under Fed. R. Civ. P. 23(a).  Plaintiff brings this suit pursuant to M.G.L. c. 149 §§ 148 and 150.  The right to sue under § 150 is conditioned on the timely filing of a complaint with the Massachusetts Attorney General, and receipt of a right-to-sue letter from that office, prior to filing a civil suit.  M.G.L. c. 149 § 150 ("[A]n employee

claiming to be aggrieved by a violation of [M.G.L. c. 149 § 148] may, 90 days <u>after</u> the filing of a complaint with the attorney general; or sooner if the attorney general assents in writing . . . institute a civil action.") (emphasis added).  <u>See also</u> <u>Sterling Research, Inc. v. Pietrobono</u>, 2005 U.S. Dist. LEXIS 31267, at *37-38 (D. Mass. Nov. 21, 2005) (citing <u>Daly v. Norton Co.</u>, 1999 Mass. Super. LEXIS 457, at *4-5 (Mass. Super. Nov. 15, 1999) (noting that the provision "mandates that all compensation claims must be filed with the Office of the Massachusetts Attorney General <u>before </u>any court may adjudicate such claims") (emphasis added)).

To satisfy the exhaustion requirement, a complaint filed with the Attorney General must "adequately describe the substance of the abuse."  <u>Sterling Research</u>, 2005 U.S. Dist. LEXIS 31267, at *38 (quoting <u>Salvas v. Wal-Mart Stores, Inc.</u>, 18 Mass. L. Rep. 649 (Mass. Super Dec. 31, 2004)).  In <u>Sterling Research</u>, the plaintiff filed a complaint with the Attorney General under M.G.L. c. 149 § 148 seeking reimbursement of medical costs, certain bonuses, and company stock.  <u>Id.</u> at *39.  The Court held that this complaint did not exhaust administrative remedies for additional claims raised in a civil action for late payment of salary and commissions, or failure to pay for two days of work.  <u>Id.</u> at 40.  Accordingly, the Court granted summary judgment for the employer on these additional claims.  <u>Id.</u> at *41.

Here, Plaintiff failed to comply with § 150's exhaustion requirement prior to filing the instant matter.  Prior to instituting this action, Plaintiff did not file a complaint with the Massachusetts Office of the Attorney General alleging that she was compelled to work through meal breaks, that Lord & Taylor's rounding policy was unlawful, or even that she was not paid for all hours worked.  The only complaint Plaintiff filed with the Attorney General prior to this suit alleged that Plaintiff was due certain vacation pay and bonuses pursuant to her compensation plan.  <u>See</u> Ex. M.  These claims are wholly unrelated to Plaintiff's claims for off-the-clock work. Because Plaintiff did not mention claims for off-the-clock work, working through meal breaks,

or rounding of time in her Attorney General complaint, she did not exhaust her administrative remedies as to those claims.[12]   As a result, Plaintiff is not an adequate representative for the purported class.  Int'l Union v. Clark, 2006 U.S. Dist. LEXIS 64908, at *22 (D.D.C. Sept. 12, 2006) (named plaintiff held inadequate, and class certification denied, where plaintiff had failed to exhaust administrative remedies under the Section 501 of the Rehabilitation Act prior to filing suit); Stubbs v. McDonald's Corp., 224 F.R.D. 668, 674 (D. Kan. 2004) (plaintiff was not an adequate class representative for Title VII claims that he did not administratively exhaust) (citing Gulley v. Orr, 905 F.2d 1383, 1385 (10th Cir. 1990) ("One of the named plaintiffs must have exhausted class administrative remedies.")).

## V.   INDIVIDUALIZED ISSUES WILL PREDOMINATE OVER COMMON ISSUES IN THE LITIGATION OF THE PURPORTED CLASS' CLAIMS

Plaintiff also fails to satisfy the more stringent "predominance" requirement of Fed. R. Civ. P. 23(b)(3).   "Even if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion is far more demanding." Amchem Prods. v. Windsor, 521 U.S. 591, 623-24 (1997).   Courts determine whether individual issues predominate by identifying "the substantive elements of plaintiff's cause of action," assessing "the proof necessary for those elements," then determining where the proof will come from and whether trial will require decisions on individual members' claims. Radmanovich v. Combined Ins. Co. of Am., 216 F.R.D. 424, 435 (N.D. Ill. 2003); see also De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 76 (D. Mass. 2009) ("It is important to look at each of the plaintiffs' claims independently, as they present different predominance challenges and problems."). Here, resolving Plaintiff's claims

---

[12] Several months after filing this action, and ten days before the close of discovery in this matter, on July 20, 2011, Plaintiff filed a Complaint with the Attorney General's office in July 2011 claiming that she was compelled to work through meal breaks without pay.  See Ex. N.  The Complaint did not advise the Attorney General's office that Plaintiff had already filed a private suit based on these allegations.  Id.  In any event, because the complaint was not filed with the Attorney General's office before Plaintiff filed the instant action, she has not complied with the § 150 exhaustion requirement.

would involve individual issues that cannot be tried commonly across the class and that would create incurable case management problems.

As explained above, for Plaintiff to prevail on her claim under § 148 (or for unjust enrichment), she must establish that she actually performed work for which she was not compensated.  The mere fact that Plaintiff did not swipe out for a meal break (and that the system responded by inserting her assigned meal period), does not establish that Plaintiff was actually working during this time.  Therefore, a break-by-break analysis would be needed to establish whether or not she was working.  A similar review would be needed for each meal break taken by each purported class member to determine whether or not he or she worked through meal breaks without being paid.   Even a detailed review of the swipe records of all purported class members would reveal, at most, instances where a meal period was inserted into an associate's time records due to a missed swipe.  This does not mean the associate was working because, as Plaintiff concedes, the missed swipe could have occurred for any number of reasons, including simple forgetfulness.  Swanson Tr. 37-38.  A trial of this claim on a class basis would, therefore, break down into hundreds of mini-trials to determine whether, for each associate and each meal break, the associate was actually working.  Hundreds of employees would be required to come forward and prove that they were required by their manager(s) to work off-the-clock during meal breaks, when such events occurred, the duration of such work, and their resulting losses.[13]

For these reasons, in "off-the-clock" cases such as this one, courts routinely find that the predominance element of Rule 23 is not satisfied.  For example, in England v. Advance Stores

---

[13] For similar reasons, the superiority element of Rule 23(b) is also not satisfied.   The resolution of both the meal break and rounding claims would break down into hundreds of mini-trials to determine whether individual class members have not been compensated for time worked. For these same reasons, courts routinely find that the superiority requirement is not met in off-the-clock cases such as this one. E.g. Hadjavi v. CVS Pharm., Inc., 2011 U.S. Dist. LEXIS 86341, at *24-25 (C.D. Cal. July 25, 2011) (superiority not satisfied in off-the-clock case due to manageability concerns regarding the number of individual issues involved).

Co. Inc., the plaintiff sought certification of a class of employees who allegedly had worked off-the-clock and without their mandated meal breaks. 263 F.R.D. 423, 454 (W.D. Ky. 2009).  The Court found that the plaintiff could not meet the predominance prong of Rule 23(b), because class litigation would strip the employer of its right to defend each of the individual claims. England, 263 F.R.D. at 456 ("[Defendant] will be stripped of its opportunity to question the frequency and duration of the alleged violations if [plaintiff's] assumptions are adopted without question.").  See also Prise v. Alderwoods Group, Inc., 2011 U.S. Dist. LEXIS 101817, at *79 (W.D. Pa.  Sept. 9, 2011) (denying conditional certification of plaintiffs' off the clock claims which were supported only by plaintiff's testimony, because they did not "rise to the level of substantial evidence supporting a corporate-wide decision, policy, or plan"); Morangelli v. Chemed Corp, 2011 U.S. Dist. LEXIS 73807, at *9-10 (E.D.N.Y. July 8, 2011) (certification denied because "as a practical matter, establishing liability for uncompensated hours . . . would require separate adjudication of each plaintiff" to determine if that plaintiff was actually working); Masterson, 269 F.R.D. at 445 (M.D. Pa. 2010) (predominance not satisfied as to "off-the-clock" claims due to the individualized nature of the inquiry); Merlo v. Federal Express Corp., 2010 U.S. Dist. LEXIS 56108, at *22-23 (D.N.J. June 7, 2010) (denying certification of an off-the-clock class due to individualized inquiries needed to determine "whether particular employees were required to perform unpaid work"); Robinson v. Wal-Mart Stores, Inc., 253 F.R.D. 396, 401-02 (S.D. Miss. 2008) (denying certification of claims for unpaid work and denied breaks for lack of predominance); Basco v. Walmart Stores, Inc., 216 F. Supp. 2d 592 (E.D. La. 2002) (same).[14]

---

[14] Plaintiff's citation to Salvas v. Wal-Mart Stores, Inc. is unavailing because the certification standard set out in Salvas is not consistent with the Supreme Court's recent decision in Dukes.  For example, Salvas refused to consider the merits of Plaintiff's claim in analyzing class certification.  Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 372 n. 67 (2008).  Under Dukes, which is binding on this Court, merits issues must be considered at class certification when they overlap with Rule 23's requirements. Dukes, 131 S. Ct. at 2551-52.  Salvas also wrongly cited Eisen v.

Predominance also fails as to Plaintiff's rounding claim.   Not only is this practice specifically authorized by Massachusetts law, but in resolving this claim for the class under Plaintiff's theory, the swipe records of every single class member would need to be reviewed, one-by-one, to determine exactly how much time was rounded up or down.   These individualized inquiries would easily overwhelm any questions common to the class.   In <u>McElmurray v. U.S. Bank National Association</u>, 2004 U.S. Dist. LEXIS 15233 (D. Or. July 27, 2004), the plaintiff sought conditional certification of a collective action under the FLSA based on a timekeeping system that rounded employees' time to the nearest tenth of an hour.   The plaintiff claimed that her time was, on balance, rounded down.   The Court observed that under the FLSA, such a rounding policy is not illegal.   <u>Id.</u> at *42 (citing 29 C.F.R. 785.48(b) (stating that rounding time to the nearest 1/10 of an hour is acceptable)).   Further, certification was denied because determining if any particular individual was similarly situated to the plaintiff would require a "very individualized inquiry and a review of thousands, if not tens of thousands, of individual time sheets." <u>Id.</u> at *44.   Because the minimum "period of time" to consider is at least several weeks, if not several months, the Court found that this exercise would be extremely daunting for even an individual plaintiff, much less a class.   <u>Id.</u>   Because the litigation would have become "dominated by issues particular to individual" employees, the Court denied certification under even the lenient standard applicable to FLSA collective actions.   <u>Id.</u> at *44-46.   If a rounding claim such as Plaintiff's in this action cannot meet even the "similarly situated" standard

---

Carlisle & Jacquelin, 417 U.S. 156 (1974), for the proposition that plaintiffs need not produce evidence that the Rule 23 requirements have been met.   <u>Salvas</u>, 452 Mass. at 363.   <u>Dukes</u> clarified that plaintiffs must present "significant proof" that the unlawful class wide practice was instituted.   <u>Dukes</u>, 131 S. Ct. at 2553-54.   <u>Dukes</u> also stated that <u>Eisen</u> should not be read to prohibit merits determinations if they overlap with the Rule 23 requirements.   <u>Id.</u> at 2552 n.6.   Furthermore, in <u>Salvas</u>, unlike here, the plaintiffs submitted overwhelming evidence of a Wal-Mart corporate policy to shave time and preclude meal and rest breaks.   This evidence included an expert analysis of Wal-Mart's payroll records, testimony from many Wal-Mart employees other than the named plaintiff, employee complaints, and numerous internal communications from Wal-Mart, demonstrating that the company had long been aware that its employees were performing off-the-clock work.   <u>Salvas</u>, 452 Mass. at 365 n.62.   Plaintiff here has provided no such evidence; merely her own bald assertions based on her own experiences with a few ASMs at a single store.

applicable to FLSA collective actions, it certainly does not meet the predominance requirement

applicable to Rule 23 class actions.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion to certify class should be DENIED.

Respectfully submitted,

LORD & TAYLOR LLC
By its attorneys,

/s/ Douglas J. Hoffman
Jeffrey S. Brody (BBO# 556032)
Douglas J. Hoffman (BBO# 640472)
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116
Dated:  September 21, 2011          (617) 367-0025; FAX: (617) 367-2155

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 21, 2011, a copy of the foregoing document was electronically filed with the United States District Court for the District of Massachusetts through its Electronic Case Filing system.

/s/ Douglas J. Hoffman
Jackson Lewis LLP

4813-0266-5738, v.  34833-8035-3546, v. 1